LLC and on behalf of the Avalanche, Mr. John Horgan, Jr., on behalf of the Avalanche, Mr. William P. Harvey. Mr. Horgan, good morning. Good morning. Please, the Court. There were too many LLCs in the name of that company. Yes. Your Honor, I'm John Horgan. I represent H3 Builders in this appeal. The record of the trial court in this case does not support the trial judge's determination that the statute of limitations barred our motion for turnover for fraudulent transfers against Mike and Dan's role. Do we have different opinions about what transfer is at issue? I believe the trial court was focused on the transfer relating to the sale of land, to the sale of real estate, which was not at issue in our motion for turnover. What was at issue for fraudulent transfer purposes was the transfer of the proceeds of that sale out of LLC Venture to or for the benefit of the Sproles. At the time of the sale of the land, at the time of those transfers, the Sproles were in control of LLC Venture. The testimony is clear that they sold the land on one date in 2005, and in 2006, took the proceeds of that sale and paid off other debts and other bills for themselves, unrelated to the business purpose of LLC Venture, not for the benefit of LLC Venture's creditors. That's the transfer that we believe is fraudulent as to the creditors of LLC Venture. It was to the detriment of my client, who had a pending claim at that time, also to the detriment of the other creditors of LLC Venture. Can we look at this in just a single incident when it's obvious, or at least the record does seem to seem obvious, that these brothers, I guess they were, or cousins, but brothers, had ongoing entities, but they were breaking those up over a period of time? That is a separate proceeding. There was a, if you want to say, a divorce of the brothers, if you will, for business purposes. That was overseen by the trial court in another proceeding. My clients were not a party to that. My clients were not aware of the transfers that we are complaining of as fraudulent transfers until post-judgment. They were suspected, though, correct? I don't even think they were suspected. Well, you say in your, you suggest in your reply brief, pages six through nine, that we're barred from considering the discussions between the trial court and H3's counsel in the underlying proceeding. Why would the trial court, as you suggest, need to be provided with a transcript of earlier proceedings in the same case in order to render a decision when he presided over those proceedings? I think it's important to define the record for purposes of supplementary proceedings. And the record for purposes of those proceedings is the pleadings, transcripts of the hearings related to those pleadings, the testimony from the date of the service of the citations forward. It is a new proceeding under the Supreme Court rules. It is not an ancillary proceeding. It is a new proceeding. It has the same case number. But it is a new proceeding, new evidence, new arguments, new issues presented for the court to consider. The motion for turnover is what initiated this entire process that led up to the hearing in February of 2012. The issues related to the statements attributed to Mr. Roth were never argued. They were not even filed, and those transcripts were not in the record. You're not suggesting that we cannot consider them in rendering our decision. Anything that's in the record cannot be relied upon by this court. Because that is not a part of the record of what was considered by the trial court in rendering its decision that the statute of limitations bars these claims. The statute of limitations is waivable. Issues not raised in defense and in prosecution of that defense in the trial court cannot be raised on appeal for the first time. Do you have a case that says that we cannot rely upon what took place during the trial proceedings as an independent basis to affirm the trial court's judgment? Well, I don't have a case at hand. The issue isn't what took place at the trial proceedings because those statements did not take place in the subordinated proceedings. They took place at an earlier proceeding and a discussion on the record about discovery matters that had nothing to do with the fraudulent transfers that we complain of in our motion for turnover or the basis for why the statute of limitations was upheld as a bar to our claims by the trial court. And I think that's an important distinction, and I look at it from my perspective. If I came in here before this court with a statement attributed to Mr. Knapp, who was the trial attorney at the time, that may have been made on the record in 2006 or 2007 saying, we intended to defraud these creditors. And I later brought that before the appellate court had my motion for turnover been denied and said, look, there's a basis for this court to overturn the trial court. It's in a transcript that I never discovered, I never argued, never presented in evidence. I'd be barred from doing that. This court should not consider that. If they wanted to present that information, the Sprouls had the opportunity in the trial court, and they failed to. Assuming we will consider it. In your reply brief, you dismissed the remarks of H.G.'s counsel as speculative. Do you want to elaborate on that? The remarks, it's actually a single remark that is attributed to Mr. Roth where it appears, and it's not clear from the transcript that anything was disclosed, that there was a discussion about whether the proceeds of the distribution of the sale of the property had been distributed out of the LLC. What's not clear, what is not discussed is whether that left LLC Venture insolvent, unable to satisfy its obligations. It was not dissolving or winding up. LLC Venture's ownership interest had been sold by the Sprouls to another individual. It continued to defend the litigation. It gave all appearances of being a going concern for many more years until eventually, in 2010, its counsel withdrew, the default judgment was entered, and the supplementary proceedings took place. There is no discussion about LLC Venture being unable to satisfy its obligations. In fact, its actions are the exact opposite of that, that it intended to aggressively defend its position in the litigation. Only years later did its attorney withdraw and a judgment was entered. That's what we believe triggered our obligation to inquire and determine what, if anything, took place that might be a fraudulent transfer. That was the entry of the default judgment. And that's your position, is that at that point only, and nothing that happened in the prior proceedings should really be relevant because you really didn't have full knowledge? We didn't have knowledge, but we also, in looking at what could we have done earlier, what would have been the relief that we could obtain? The transfer allegedly had occurred. We had no judgment. We didn't have the right to any property. Are you saying the judgment's required? In order for us to have an obligation to inquire. Well, to put you on some kind of notice, put you on reasonable notice that an inquiry should be initiated? I'm not entitled as the litigant to get that financial information in the underlying case. It doesn't have any relevance to the claim of breach of contract. If I serve discovery asking for the tax returns of that defendant, for the financial records of the defendant, for the financial records of its owners, those are not relevant to whether or not they breached their contract with my client and whether I'm entitled to damages for that breach. So is your position then that the limitations period cannot begin to run before the judgment enter? Is that what you're saying or no? It can. The issue is, well, and the four-year provision does begin to run, but that's why we have the one-year savings provision when litigation outstrips the running of the four years. I don't have a right to that information as a litigant. Well, if you had filed a fraudulent transfer claim, you would have got a right to that information. I guess that presupposes that we had a knowledge that we had been defrauded and that we had been hard or wrong in some way that would have merited such a claim. In 2007, what's clear from the transcript is where Mr. Roque made his statement that the Sprouls were at that time informing the court that they weren't going to be responding to discovery because LLC Venture wasn't in their control anymore. They had sold their interest to a third party, and they were washing their hands of the situation. When did you say that date was? The hearing was in May of 2007. From that point forward, the new owner of LLC Venture continued to defend the litigation, continued to prosecute the case, only until 2010 did the attorney withdraw and a judgment was entered. It was at that point we could serve citations, get the financial information, and then act upon that information. That's exactly what happened here. Could you have filed notice that a suit was pending generally? In this case, Liz Pendens or something of that nature? The suit that was pending, the underlying case, had nothing to do with an ownership interest in land, so Liz Pendens wouldn't have been appropriate. In fact, it would have been a mislander of title. My clients purchased 20 lots in a subdivision of a much larger project that was being developed by LLC Venture. None of the other land owned by LLC Venture was subject to that litigation. Only LLC Venture's performance of certain obligations under its contracts with my client were issued. If I filed a Liz Pendens to tie up or slot a title of LLC Venture in all of its other property, my client would have been subject to a claim for slander of title. They had no legitimate claim to any of that land, so we could not do that. That's the type of notice that the trial court made reference to. There is no basis that we can see for the recording of a Liz Pendens. And you couldn't have limited it to your 20 lots in any way? My clients already own the lots, so we are doing the lots. But there was work that needed to be done to make those lots viable for building.  And although Galena had agreed to provide some of the materials, it sounded like LLC Venture or the Sproul Construction or one of those entities was actually going to do the work with Galena's money and materials. Galena was, in part, if a timetable had been met, going to help fund those material costs. The timetable wasn't met. That was the reason for the filing of the underlying lawsuit. Again, in terms of notice, the lawsuit is the notice of our claim. When we find out that we've been wrongfully harmed by these transfers is when we actually learn of the transfers, how they were done, for whose benefit they were done. LLC Venture could have paid the bills of any number of people or no one. We didn't have the right to inquire into its internal financial information until post-judgment, and that's when a citation to discover assets gives a litigant that right. As a judgment predator, we inquired. We were timely in doing so. We learned what we learned, and we acted upon it with a motion for turnover in the trial court. What about Mr. Malik's testimony that I think we can consider, or Malik, I apologize if I'm mispronouncing his name? Mr. Malik, yes. Where he said he had concerns since almost the beginning of the process. What do we do with those statements? What Mr. Malik said in his testimony is I had a generalized concern that I was a victim of fraud, that these two gentlemen never intended to perform on this contract that I entered into with them. They induced me into buying these 20 lots, to paying the amount of cash up front that he had paid, and that they had never the ability or the intention of completing the improvements that they were contracted to do. He had nothing in Mr. Malik's testimony indicates that he was either aware of the transfers that are at issue or aware that the Sprouls had fraudulently obtained the proceeds of the sale of the property in order to pay off their other business and personal debts. There is nothing in his testimony that even gives a hint of that. He thought he was the victim of two people who lied to him in entering into a contract. That's what his testimony is about. It is a generalized, I know I was lied to, these people deceived me. But knowing that doesn't give him the ability to inquire into the internal workings of the company. It gives him the ability to sue them. He did file a fraud claim, which was eventually dismissed. He did pursue his company's breach of contract claim. That claim ultimately resulted in a judgment. Aren't you really essentially asking us to reweigh the evidence? The trial court found Malik's comments that Justice Hutchinson just asked about to be important. We are not asking the court to reweigh the evidence because, as a matter of law, there is no evidence that supports a finding that there was any knowledge that initiated  The evidence that the court focused on Mr. Malik's testimony would suggest that the statute of limitations began to run with the filing of our case in 2005, in February of 2005. Well, that can't be possible. The transfers at issue hadn't occurred. The land hadn't been sold. Nothing had happened. But yet that was the trial court's, in part, ruling. Well, the trial court was talking about his suspicions, that he had those suspicions in 2005 and when the transfers occurred, he should have done something. Again, there is no testimony or evidence that there was any knowledge of those transfers. The only evidence is that there was a knowledge or awareness, at a minimum from the public record, that the land had been sold. That's the transfer I'm talking about. It's the land that's been sold. Where's the money going? And if you're suspecting that there's fraud they never intend to carry through on the contract, shouldn't that lead to a reasonable person that you should look at this and determine whether or not they're going to fleece the corporation to take the money? I think the only response to that is there's no ability to do anything other than prosecute your claim. You have a breach of contract claim. You prosecute your claim. You don't have the right to that information. Go ahead and finish. Because there is no evidence or information in the record to support the court's determination that the statute of limitations bars H3 Builders' motion for turnover and fraudulent transfer claims against the Swells, we would ask this court to reverse and remain for the proceedings consistent with moving forward on the motions for turnover. Thank you. You'll have an opportunity for reply. Thank you. Mr. Hardy. May it please the Counsel? My name is William Hardy. I represent the Respondent Citation Appellee, Michael Spruill. At the outset I'd like to say that Counsel for Dan Spruill indicated to me that he's adopting my argument. The issues are the same. That's why he's not here. Your questions, Your Honor, go right to the heart of the matter. All three of you, the questions that you've asked explain why the trial court's decision is correct. Number one, there's no waiver here. There can't be any waiver. The supplemental record is not really something that wasn't presented to the trial court. The supplemental record consists of the transcripts that were before the court at the time of the hearings, the judges at these hearings. Well, that's an interesting question here. I mean, even in Springfield, you know, the case could have been heard by one judge and then a change of assignment and we bring another judge in and he or she doesn't have any idea what really happened other than looking at the trial record, the trial court file to see what happened. That's not going to happen in Galena. There are two basic judges, Judge Kelly and Judge Ward. And are we to tell them by this decision or decisions that we make that they can't remember anything that happened in the previous litigation? No, we are not to tell them that. The answer to that is that they're entitled to rely on what they know about the case. It is an earlier proceeding, and this is a supplemental citation filed in that proceeding, but the record consists of all the pleadings leading up to that. Plano's counsel talks about this being some new transcript that incites a case in their reply brief about how a transcript in an arbitration proceeding when there was a motion to compel arbitration, how that transcript wasn't submitted to the trial court. Well, that's completely different. That's evidence. That's evidence that wasn't presented to the trial judge. It's not even in the record. Here, I'm an appellate lawyer. I got involved in this case after the record had been filed and so forth. First thing I did, obviously, was review the record, the record that was requested and submitted to the trial court in response to Plano's request to prepare the record. That consisted of all these pleadings and the orders of the court. And as you say, there are only two judges there. Every one of those transcripts of those hearings are of Judge Kelly because he handled the case from day one. And this was raised. This absolutely was raised. During the arguments on the motion to dismiss, this is before the evidentiary hearing, the Spruill's counsel made the argument that, look, this has been before the court many times in the past, referred to the fact that all of this happened. We had the fact that he made the argument that the principals of H3 knew about what was going on back then. And all of those things were before the court. They were referring to the things that happened back in 2007. All of this was before the trial court at that point. It was argued that the settlement occurred between the new owner. All of those points were made. The notion that we somehow waive that, we're the appellate here, or we're the appellee in this case. We're not the appellant. Waiver does not apply under these facts. If that's the case, I mean, we have not even presented our case, Your Honor. We, in essence, moved for a directed verdict at the end of the plaintiff's case on the evidentiary hearing. If this court were to reverse and remand, well, certainly we would call that to the court's attention that, hey, here's the transcript. Here's what Mr. Ross said. But there's no point in doing that. On this record, I would suggest to you that if this came up and the court had ruled the other way, it would be against the manifest way of the evidence to say that the statute of limitations didn't begin to run over the one-year period, the reasonable suspicion, as of at the very latest, May of 2007. In your opinion, what's the earliest point where H3 knew or should have known about the fraudulent transfer? What's the earliest point? Well, assuming there was a fraudulent transfer, and there wasn't. But I would say the earliest point on this record is in 2006. They knew about what was going on here. Mr. Roth, that May of 2007 hearing not only dealt with just the sprules not responding to discovery,  and this court has taken judicial notice of that complaint and all the documents attached to it. That complaint was filed by Dan Spruill against the new owner of the LLC, compelling him to complete the additional things that needed to be done. That complaint, all we have to do is look at that complaint, and we see that Mr. Roth had plenty of knowledge to trigger the one-year statute of limitations. And by the way, there's no question that everybody's in agreement that the transfer issue is in 2006, when the sale occurred of the $2.5 million sale, and then we have the money that's transferred out to pay all these debts. But all that's laid out in the contract. Mr. Roth mentioned this complaint, and that's the reason I asked the court to take judicial notice of it. And by the way, the court can certainly take judicial notice of transcripts, anything that's in the record, anything in a related proceeding. It's certainly a related proceeding. But in that contract, it lays out exactly what's going to happen here, and Mr. Roth knew about it early in 2007. It not only talks about the properties that are being sold, and this was a huge deal. The whole thing was $3.6 million. The LLC was a party. The Sprules were a party. Mr. Sindhu was a party, the purchasing party. It involved $3.6 million total. It was a sale of the rest of the Scenic Meadows property for $2.5 million. It also included these rock quarries or pit gravels. It included, in fact, on page 5 of the contract. This is the very complaint that Mr. Roth is referring to when he's talking about possibly filing a fraudulent transfer claim. The claims, it says right here, certain mortgages and tax claims exist. This is paragraph 16 of page 5. Certain tax claims and mortgages exist which will be satisfied with the proceeds. Some money is owed to different contractors, Flynn Ready Mix, a supply company, a realty company. And then in section D, it says money is owed to the creditors of Sprule Construction, which will be satisfied for the first closing. I mean, it's right there in 2007. Now, if that's not enough to put the Plaintiff's Counsel on reasonable inquiry notice, and the notion that they could not discover any of this, I mean, it's right there. They knew about it. In fact, he says, Your Honor, you asked about this statement that was made by Mr. Roth. I don't know how we can get any clearer. I really don't. What Michael and Daniel Sprule do is they say, well, we've solved this. That's what this he's referring to. That's obviously he's he mentioned it to the court at that point. Whatever compensation we got for it, we distributed out of the LLC. There's nothing in there. We don't have a property anymore. We can pay that up. So, Mr. Plaintiff, you can't look to us. And then he refers mentions that he's probably going to file a fraudulent transfer claim. All right. Judge Kelly, in his resolution of this case, talks about no discovery, no this pendants, no this. This wasn't a secret transaction that people knew there were some financial issues. Were any of those assumptions that the Liz pendants, the discovery, would those have been appropriate in this case? I think certainly, certainly the discovery, the history of the case, you know, the Liz pendants, you know, they knew about it. I think they could have filed something. But even if even if they couldn't, it's a slander on title. They say it doesn't matter whether that's one of the bases that the judge relied upon. But the judge made it very clear that he knew which transfer they were talking about. He or a follow up question said, look, I believe you asked a question about this, Justice Burkett. At first, he had suspicions when the complaint was filed. Those suspicions continued on after the after the transfers. In May of 2007, we had discussions between plaintiff's counsel and Mr. Roth and Mr. Malik. All of this was before the court and the notion that the court can't consider that. I'm not aware of any case anywhere that says that the court can't consider a transcript of the proceeding where the judge was actually there. And of course, this court can affirm on any ground appearing in the record. As I say, we're an athlete. We make that point in our brief. How would a fraudulent transfer action in this litigation made any sense? Because that seems to be another issue that there was not. There was a motion for turnover in supplemental proceedings, but in the actual litigation, they never sought to amend for a fraudulent transfer. They did. He said that he was planning on doing that or he was considering doing that. I think actually the proper procedure would have been for him to get a judgment. He could have gotten a judgment. He said himself, Mr. Roth, that he could do it within 45 days. You know, this thing went on for years and years and years. If you accept this argument to its logical conclusion, the plaintiff could have waited another five years, could have completely sat on the case. That's a point we make in our brief that wasn't responded to in the reply brief. He could have gotten a judgment. He could have conducted discovery. He certainly could have conducted discovery on this contract that he knew about because it was all about the road and the road. It was on land on part of this land. They were entitled to discover what to ask questions about this contract and where the money was going. And the notion here's the other problem with it. Their argument seems to be that, look, they should have sold this property to Mr. Sindhu for two point five million dollars and then left the money in the LLC. It's like me selling my business to someone for a million dollars. And then I leave a million dollars in the business. And the guy gets not only the business, but the million dollars. I mean, what happened here was no secret. Everybody knew about it in 2007. And it wasn't just the LLC continued in existence. There's no question about that. It continued in existence. It was defended for many, many years. The settlement could have been enforced in 2008. The judge even dismissed it at one point because the judge said, look, what's going on here? We settled this case. You know, it was finally reduced to judgment years later. And, you know, we're not taught. We're also talking about additional consideration in here. This also references a chosen action. You know, part of this, it's it's complicated. And I don't know how much detail you want me to get into. But in the supplemental proceedings, there was also an action to turn over this option to purchase additional property. If you go back through the history of this, you know, all this land was bought by a doctor from Dr. Bartel way back in 1998. Dr. Bartel continued to live on a farm there, and he retained the right to live to several other tracks around there. And it was an option to purchase that that LLC venture had. And that option was based on 1998 prices. That's a very valuable option. And if this gets reversed, I'll have to present the evidence. But we just found out last week that options been exercised. So where is that contract that you're talking about in the record? What are the record pages? Well, that is the motion. I filed a motion in the trial court during the appellate court requesting the appellate court to take judicial notice of that. That's where it is. No response was filed to that. And the court granted it. Now, this is the very complaint with the attachments that Mr. Roth is referring to in 2007. So, you know, this this could have been discovered. And I am in terms of the standard review. I do want to make a couple of points about that. I don't think there's any question that the standard review is manifest way to the evidence here. In response to in the reply brief, plaintiff's counsel cite some cases and says, look, there's a long, unbroken line of cases that say if there's a motion to dismiss based on the statute of limitations, that's de novo review. Well, you have to look at the facts here, the underlying facts here. This is not a situation where you're looking at a cold record. The same record that the trial court is looking at. The judge heard evidence. Any time there's an evidentiary hearing on a question of fact, and there's no doubt that the discovery is a question of fact. The burdens on the plaintiff to prove that it's a manifest way to the evidence standard. Now, I'm not aware of any case that says that under these circumstances, a de novo review would be required. It simply makes no sense. There is one case, I should say, that cited by plaintiff's counsel in his reply brief where the first Baptist case, I believe, where the court did hold a bench trial. And then ultimately the court reversed on a statute of limitations issue. But there wasn't a discovery rule issue. It was a straightforward legal question as to what the statute of limitations was and whether it applied. So here where we have an evidentiary hearing, I think the law is very clear. Now, did we cite a case where there was an evidentiary hearing involving a discovery rule? No, I cited many other cases that talk about when there's an evidentiary hearing and a question of fact, the standard of review is manifest way to the evidence. So when you apply that, it certainly would make no sense whatsoever to reverse this thing. You know, this has been going on for so many years. If this court were to demand and allow and require us to present all of this, which our contention is was already presented, it simply would not make any sense. And it would be a waste of judicial resources. And finally, I would just like to make. If you could do it briefly, please. Oh, sure. Well, you know, I don't have anything further. I would ask that the court affirm the judgment of the trial court. And thank you. I believe the first important issue is who had the burden in the trial court to establish this defense of the statute of limitations. And that was on the Sproles. The Sproles' entire response to this appeal is not based upon the record of what they argued in the trial court. It is based upon information that was discovered by appellate counsel or that he added to the record. For example, the transcript of the May 2007 proceedings. That transcript was not in the record until August of 2012, six months after the hearing. Counsel ordered that transcript. There's no reference to any such testimony that's found, statements that are found in that transcript by the trial judge when he made his ruling in February 2012. Well, and this is a question I ask counsel. This case was not heard in Kane County and where our site is now, where it might have been heard by one judge. And then because of change of assignments, the supplementary proceeding goes before another judge. There are two judges in Galena. And they can bring judges in from other, you know, other counties in their circuit. But what are we to tell Judge Ward or Judge Kelly? Forget what you know about this case. Forget that you were involved in this case because now this is a separate proceedings? Absolutely not. However, what is argued in the response to this appeal was not argued in the trial court. It was not presented in the trial court. We can't attribute to the trial court information that forms the basis of the trial court's ruling that is not referred to in the judge's ruling or ever referred to in any of the proceedings that led up to that ruling. He doesn't make mention of it. Judge Kelly has been there for all of these proceedings for all of these years. That doesn't mean that every statement that ever occurred before him is ever present in his mind and can later be pulled out of a transcript after a hearing has occurred where the transcript was never filed or presented as a part of those proceedings and say, well, see, this actually supports what he did. So we can have that spring forward. But he knows. It's obvious he does know about this case. He knows that certain things weren't done. He knows that certain things were done, and those weren't necessarily part of the testimony. He knows what happened. He knows what discovery didn't happen. I mean, I think that's pretty obvious. No discovery was on this issue. Well, you know, that wasn't part of the hearing on the supplementary proceedings, to my recollection. The discovery issue was argued in the turn of the proceedings. But more importantly, counsel said many, many times everybody knew about what was going on. Everybody knew about it. We have to look at what's actually in the testimony and the record that was relied on by this judge. The contract, the business dealings of LLC Venture are all simply business activity. There isn't anything in the business activity of LLC Venture that would have triggered an obligation by my client to, one, ask for and then argue for discovery when it was denied. I'm in an enviable position of having to argue that I could never get discovery, even if I'd asked for it. I understand it wasn't obtained. But I didn't have a right to it as the plaintiff in a breach of contract case because there was a business transaction involving the Scrolls and all of their other businesses where they were selling assets and paying off debts to say, I need to know about that. It doesn't bear on the breach of contract claim. Now, you keep saying this, but Mr. Malik's statements as early as 2005, the activities in 06 and 07. What about just inquiring? Forget about a court order for discovery. What about just inquiring about where's the money, what's going to happen? Again, that suggests we, I guess, issue interrogatories, asking questions about these business transactions. Maybe we would have received answers. Maybe we would have received objections. It's our contention that they would have been properly objected to, and such an objection would be upheld. That's all speculation. So you're maintaining no matter what is in the record. It's not until you get a judgment that you can get discovery to find out what happened to these funds. That's your position. As a lawyer in the breach of contract case, yes, yes, Your Honor. The only time that I can go and ask for this is when I have a liquidated claim. And you could not be charged with knowledge if there may have been a fraudulent transfer until that point in time? That's when I had a duty to inquire, so therefore I had an obligation to inquire, and that's when my one-year period began. So you disregard all the remarks that were made on the record before that? Yes. Maybe you had an obligation then to inquire, but it appears Mr. Malik had suspicions. So why didn't somebody do something? And then when this contract to Mr. Sindhu or whatever his entity was called, he had to have roads and he had to have these things, the same problems you were having or the same issues that you needed to have resolved. You've got to be interested, or your client had to be interested in that. I think the record is very clear that from every court appearance after the land was sold and the money was distributed, that LLC Venture negotiated to settle this case and gave every appearance that it was going to perform on its obligations. There were multiple attempts to settle the litigation where LLC Venture was again going to deliver on its promise to construct those improvements so that my client's property was accessible and could be developed and homes could be built on those lots. But they weren't necessarily going to do it with their own money. It looked like they were going to do it with the City of Galena's money or materials. Well, that was prior to the expiration of those deadlines in the annexation agreement. There were attempts to get the City to get on board later on. They had no obligation to do so. The City's obligations were tied to a very specific, tight delivery schedule in 2005. That was not even close. In 2007, 2008, 2009, there were repeated attempts to settle the case where the City was brought in, attempts for me to get the City to infuse some funds for materials. That all took place. That was LLC Venture leading my clients to believe they were going to perform and deliver on their promise. That was the purpose of the settlement that never was effectuated. There was a motion to enforce that settlement. That was ultimately not ruled on and a judgment was entered because counsel withdrew. No new counsel appeared. That's what triggered our inquiry into all of the underlying information regarding LLC Venture when we discovered that all the money was gone, that there was nothing behind those promises in any of those settlement discussions ever. Who were the supplementary proceedings specifically against? Michael Sproul and Ann Sproul, who were the subject of the motion for turnover, as well as the accountants for LLC Venture. Those were the three primary. But Sindhu is not necessarily a person who was subject to these proceedings. I can tell you that Sindhu we couldn't locate. Chackat Sindhu was a person who we were never able to get served. His counsel withdrew, and there's been no contact with him and no participation in the litigation, the supplementary proceedings. He never stepped forth to object to the judgment. Counsel made reference to the, what do you call it, the option with respect to the Bartell property. His statements are largely accurate with respect to my clients did in fact obtain a turnover of that asset. It was the sole remaining asset. Other than the actual land where the roads are located around my client's subdivision, the only sole asset we were able to find was this right to this Bartell farm. No one ever intervened to object to our turnover of that or our performance and execution on those rights. They've had every opportunity to be able to participate. They haven't. We pursued our rights when we had this judgment so we could find out what's there for us to collect. And that's what resulted in these proceedings. For those reasons, we'd ask that you reverse the ruling of the trial court and remain for further proceedings. Thank you. Thank you, gentlemen, for the travel as well as the argument this morning. And this will be taken under advisement. A decision will be rendered in due course. Thank you.